UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| JAMES F. MCKINNON, ADMINISTRATOR, | ) | |
| OF THE ESTATE OF YVONNE T. MCKINNON, | ) | |
| AND JAMES F. MCKINNON, INDIVIDUALLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:05-CV-93-JAW |
| | ) | |
| PHILLIPA HARRIS AND RUSSELL ALGREN, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER ON DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS

On June 12, 2002, after drinking heavily, Phillipa Harris got into a car, drove around a blind curve on the wrong side of the road, crashed head-on into a car driven by Yvonne McKinnon, and killed her. This motion raises the question of whether, under New Hampshire law, a motorist operating under the influence of alcohol has engaged in wanton conduct, entitling the injured party to enhanced compensatory damages.[1] This Court concludes New Hampshire law does not allow enhanced compensatory damages in these circumstances and, therefore, grants Defendants' Motion for Judgment on the Pleadings.

I. PROCEDURAL BACKGROUND

Plaintiff James F. McKinnon, individually and on behalf of the Estate of Yvonne T. McKinnon, brought suit against Defendants Phillipa Harris and Russell Algren arising

---

[1] This matter was transferred to the District of Maine after all judges in the District of New Hampshire were recused. (Docket # 6, 7, 8, 9, 10). The Plaintiffs filed this cause of action in New Hampshire Superior Court; the Defendants removed the matter to United States District Court on the basis of diversity of citizenship. 28 U.S.C. § 1332. (Docket # 1).

from a two-vehicle accident on the Ossipee Lake Road in Freedom, New Hampshire, on June 12, 2002, that resulted in injuries to and the death of Yvonne McKinnon. Mr. McKinnon alleges in Count I of the Special Declaration that Ms. Harris's conduct was "reckless and wanton and if such conduct was not reckless and wanton, it was grossly negligent" and he seeks "enhanced damages."[2] (Docket # 1). Defendants filed a Motion for Judgment on the Pleadings on Claim for Enhanced Compensatory Damages (Docket # 11), arguing New Hampshire law does not support such damages.

## II. LEGAL STANDARD

Rule 12(c) allows a party, "[a]fter the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *Feliciano v. Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998). In reviewing a Rule 12(c) motion, the district court must accept "all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in its favor." *Feliciano,* 160 F.3d at 788. The "standard governing the allowance of a Rule 12(c) motion is generally more generous to the nonmovant" than the standard governing a motion for summary judgment. *McCord v. Horace Mann Ins. Co.,* 390 F.3d 138, 141 (1st Cir. 2004). Judgment on the pleadings under Rule 12(c) may not be entered unless "it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief." *Feliciano,* 160 F.3d at 788*; Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir. 1991). In the "archetypical case, the fate of a [Rule 12(c)] motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust*

---

[2] The Special Declarations contain three counts and name as co-defendants Ms. Harris, the operator of the motor vehicle, and Russell Algren, the owner. Count I is directed against Ms. Harris only. Neither additional count claims enhanced damages and neither is subject to the pending motion.

*Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004).

## III. FACTS

The facts are tragic.  On June 12, 2002, Phillipa Harris was driving a motor vehicle in the area of Tamworth and Freedom, New Hampshire, after she consumed alcohol.  *Special Declaration* at ¶ 1.  She stopped at Sammy's Paw Print, a local bar, where she drank several martinis.  *Id.*  Ms. Harris got back in her vehicle and drove east on Ossipee Lake Road.  *Id.*  Once on the road  and after drinking "grossly excessive amounts of alcohol," Ms. Harris lost control of the vehicle, headed around a blind curve on the wrong side of the road, and crashed head-on into Yvonne McKinnon's vehicle.  *Id.* ¶ 3.  Ms. McKinnon suffered "fear and emotional pain in anticipation of death, fatal injuries, and other damages and losses."  *Id.* ¶ 5.

## IV. DISCUSSION

### A. Enhanced Compensatory Damages

The state of New Hampshire statutorily restricts the availability of punitive damages,[3] but in their absence, has adopted the concept of "enhanced compensatory damages."  *See DCPB, Inc. v. Lebanon,* 957 F.2d 913, 915 (1st Cir. 1992); *Vratsenes v. N.H. Auto, Inc.,* 289 A.2d 66, 73 (N.H. 1972).  Enhanced compensatory damages allow a factfinder to increase compensatory damages "for the resulting actual material loss . . . to compensate for the vexation and distress caused the plaintiff by the character of defendant's conduct."  *Vratsenes,* 289 A.2d at 72.  Enhanced compensatory damages differ from punitive damages "in that the premium is designed not to punish the

---

[3]Punitive damages have never been favored in New Hampshire.  *See Fay v. Parker,* 53 N.H. 342, 383 (1872) ("The idea is wrong.  It is a monstrous heresy.  It is an unsightly and an unhealthy excrescence, deforming the symmetry of the body of the law.").  They are now statutorily restricted.  In unmistakable language, New Hampshire law states:  "No punitive damages shall be awarded in any action, unless otherwise provided by statute."  N.H. REV. STAT. ANN. § 507:16 (2004).  The Plaintiff has not claimed there is a statutory exemption that would allow punitive damages in the facts of this case.

wrongdoer but to reflect the aggravating circumstances of an injury caused to the plaintiff." *DCPB, Inc.,* 957 F.2d at 915.

The Supreme Court of New Hampshire has limited the availability of enhanced compensatory damages to occasions where the wrongdoers' acts are "wanton, malicious, or oppressive." *Figlioli v. R.J. Moreau Cos.*, *Inc.*, 866 A.2d 962, 966 (N.H. 2005) (citing *Crowley v. Global Realty, Inc.*, 474 A.2d 1056, 1058 (N.H. 1984)); *see also Vratsenes,* 289 A.2d at 73 (stating that compensatory damages may reflect aggravating circumstances in cases where the tortious conduct is "wanton, malicious, or oppressive"). *Figlioli* states that enhanced compensatory damages, also called "liberal compensatory damages," are "awarded only in exceptional cases, and not even in every case involving an intentional tort." *Figlioli*, 866 A.2d at 966 (citing *Munson v. Raudonis*, 387 A.2d 1174, 1177 (N.H. 1978)).

An award of enhanced compensatory damages for any tort, intentional or unintentional, must be based on an allegation and proof of wanton, malicious, or oppressive conduct. *Johnsen v. Fernald*, 416 A.2d 1367, 1368 (N.H. 1980); *see also DCBP, Inc.,* 957 F.2d at 915 (unavailable for breach of contract claims); *Minion, Inc. v. Burdin*, 929 F. Supp. 521, 523-24 (D.N.H. 1996) (available for tortious conduct, either intentional or unintentional, but only if wanton, malicious, or oppressive); *Manchester Mfg. Acquisitions, Inc. v. Sears, Roebuck & Co.,* 802 F. Supp. 595, 606 (D.N.H. 1992) (not available for negligent misrepresentation); *Figlioli,* 866 A.2d at 966-67 (not available for failure to lag bolt a deck resulting in personal injuries caused by its collapse); *Aubert v. Aubert,* 529 A.2d 909, 914-15 (N.H. 1987) (available in personal injury action for attempted matricide); *Crowley,* 474 A.2d at 1058 (available for

intentional misrepresentation involving wanton, malicious, or oppressive conduct); *Munson,* 387 A.2d at 1177 (where damages are based on malice, available only upon a showing of actual malice).

### B. The Wanton Allegation

Selecting among *Vratsenes'* trilogy of bad behavior,[4] Mr. McKinnon alleges only that Ms. Harris's conduct was "wanton."[5]  *Special Declaration* at ¶ 4.  It is no bar to a claim for enhanced compensatory damages that there is no allegation of an intentional tort.  In *Minion,* Judge McAuliffe concluded it is "entirely consistent with New Hampshire tort law for 'wanton' conduct justifying enhanced damages to be found in connection with an unintentional tort."  *Minion,* 929 F. Supp. at 525.  Consistent with *Minion,* unless there is no set of facts as alleged and reasonably inferred in the Special Declaration that sustain a claim of wanton conduct, the motion must fail.

### C. "Wanton" Under The Law

What is "wanton?"  The legal concept differs from lay definitions.[6]  But, even the legal definition contains regrettable imprecision.  *See Chaffin v. Chaffin,* 397 P.2d 771, 776 (Or. 1964) ("Wanton misconduct in the law of torts also partakes of several

---

[4] Mr. McKinnon makes no claim that Ms. Harris's conduct was malicious or oppressive.  To be entitled to enhanced damages based on malicious conduct, the plaintiff must prove actual malice, which is defined as "'ill will, hatred, hostility, or evil motive on the part of the defendant.'"  *Johnsen,* 416 A.2d at 1368 (quoting *Munson,* 387 A.2d at 1177)).  Whatever else may be said of Ms. Harris's conduct, there is no allegation in the Special Declarations that she was impelled by ill will, hatred, hostility or evil motive.

[5] The Special Declarations also allege her conduct was reckless and grossly negligent, but neither allegation would trigger the availability of enhanced compensatory damages or, alternatively, to the extent they could, the arguments are subsumed under the allegation of wantonness.

[6] Webster's Third International Dictionary states that "wanton" is derived from two Middle English words, themselves derived from Old English.  "Wan" referring to "wanting" or "deficient" and "towen," the past participle of the word "teen," meaning "to draw, train, [or] discipline."  WEBSTER'S THIRD INTERNATIONAL DICTIONARY 2575 (3rd ed. 2002).  The original meaning was "lacking discipline" or "not susceptible to control."  *Id.*  The word later acquired a moralistic edge.  It can mean excessively gay, merry, or frolicsome, or unchaste, lewd, or lustful.  *Id.*  In the context closest to the legal meaning, the word can mean "marked by or manifesting heedless disregard of justice or of the rights, safety, or feelings of others."  *Id.*  None of these lay definitions, however, captures the meaning of the word as used by the Supreme Court of New Hampshire.

meanings."), *overruled on other grounds by Heino v. Harper,* 759 P.2d 253 (Or. 1988).

The Restatement (Second) of Torts defines "Reckless Disregard of Safety":

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500 (1965).  The Reporter made a Special Note:  "The conduct described in this Section is often called 'wanton or willful misconduct' both in statutes and judicial opinions.  On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another."  *Id.* (Special Note).

Other jurisdictions have tackled the task of defining "wanton" conduct.  Alabama has most often addressed the definition of "wantonness," because the term has been used in state tort law, later codified, and, therefore, has required judicial interpretation.  *See Richards v. Michelin Tire Corp.,* 21 F.3d 1048, 1057-58 (11th Cir. 1994); ALA. CODE § 6-11-20 (1987) (defining "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.").

*Birmingham R. & E. Co. v. Bowers,* 20 So. 345 (Ala. 1896), provides a helpful analytic template.  In *Birmingham,* the Supreme Court of Alabama first drew a distinction between mere negligence, which does not require intent to do wrong or cause damage, and willful injury, which does require design, purpose, or intent to do wrong or inflict injury.  20 So. at 346.  *Birmingham* went on to say:

> Then there is that reckless indifference or disregard of the natural or probable consequence of doing an act, or omission of an act, designated, whether accurately or not, in our decisions, as "wanton negligence," to which is imputed the same degree of culpability and held to be equivalent

> to willful injury.  A purpose or intent to injure is not an ingredient of
> wanton negligence.  Where either of those exist, if damage ensues, the
> injury is willful.  In wanton negligence, the party doing the act or failing to
> act, is conscious of his conduct, and without having the intent to injure, is
> conscious, from his knowledge of existing circumstances and conditions,
> that his conduct will likely or probably result in injury.

*Id.*  The *Birmingham* definition of wanton negligence – that the party doing the act or failing to act is conscious of his conduct and without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury – is generally consistent with other courts. *See Rommell v. Automobile Racing Club of Am., Inc.,* 964 F.2d 1090, 1096 (11th Cir. 1992); *Wunderlich v. Franklin,* 100 F.2d 164, 167 (5th Cir. 1938), *cert. denied,* 307 U.S. 631 (1939); *Hazle v. Southern Pac. Co.,* 173 F. 431, 432 (C.C.D. Or. 1909); *Southeastern Fire Ins. Co. v. Helton,* 192 F. Supp. 441, 445 (S.D. Ala. 1961) ("the lack of care and disregard of probable consequences . . . so great that, in its ethical aspects at least, it [is] analogous to a will or intention to produce the result") (quotations omitted); *Lee v. Ledsinger,* 577 So. 2d 900, 902-03 (Ala. 1991); *Womack v. Preach,* 163 P.2d 280, 283 (Ariz. 1945) ("a reckless disregard of the rights of others, a reckless indifference to results, or that the injury is the likely and not improbable result of the wrongful act"); *Miller Pipeline Corp. v. Broeker,* 460 N.E.2d 177, 182 (Ind. 1984); *Jackson v. Edwards,* 197 So. 833, 836 (Fla. 1940); *Martin v. Kansas City, M. & B. R. Co.*, 27 So. 646 (Miss. 1900) ("knowledge that the probable consequences of the conduct would be to inflict injury"); *Payne v. Vance,* 133 N.E. 85, 88 (Ohio 1921); *but see Chaffin,* 397 P.2d at 776 ("depravity done to inflict injury on someone and is equivalent of malicious"); *Bailey v. North Carolina R. Co.,* 62 S.E. 912, 914 (N.C. 1908) ("implies turpitude, and that the act is committed, or omitted, of willful, wicked purpose").

### D. "Wanton" In New Hampshire

What is "wanton" in New Hampshire?  The Supreme Court of New Hampshire has never precisely defined the term, but has discussed the concept.  In 1992, the Supreme Court issued two opinions that shed some light:  *Thompson v. Forest,* 614 A.2d 1064 (N.H. 1992) and *Akerley v. Hartford Ins. Group,* 616 A.2d 511 (N.H. 1992).  For Judge McAuliffe's discussion of these cases, see *Minion*, 929 F. Supp. at 525; *see also Inserra v. Nedeau,* No. 93-279, 1994 U.S. Dist. LEXIS 16278, at *12 (D.N.H. Nov. 10, 1994).

In *Thompson,* the plaintiff alleged her co-employees engaged in "willful, wanton and reckless" conduct, which was sufficient to allow a civil action overriding the co-employee immunity provisions under New Hampshire's workers' compensation law. 614 A.2d at 1064-67.  As *Thompson* explained, to maintain a cause of action against a co-employee, New Hampshire law required an intentional tort.  *Id.* at 1066-67.  *Thompson,* therefore, addressed whether "willful, wanton and reckless" conduct "constitutes an intentional tort, [thereby] allowing suit against a co-employee under the Workers' Compensation Law."  *Id.* at 1067.  To answer this question, *Thompson* discussed the definition of "wanton."  It quoted from Professors Prosser and Keeton's treatise:

> [T]he mere knowledge and appreciation of a risk - - something short of substantial certainty - - is not intent.  The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and *if the risk is great the conduct may be characterized as reckless or wanton,* but it is not an intentional wrong.

*Id.* at 1067-68 (quoting W.P. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 8, at 36 (5th ed. 1984) (emphasis supplied).

In *Akerley,* the Supreme Court of New Hampshire again addressed wanton

conduct, this time in the context of the fireman's rule. "The fireman's rule precludes 'a police officer or fireman, both of whom are paid to confront crises and allay danger created by an uncircumspect citizenry, from complaining of negligence in the creation of the very occasion for their engagement.'" *Akerley,* 616 A.2d at 513 (quoting *England v. Tasker,* 529 A.2d 938, 941 (N.H. 1987)). The Supreme Court of New Hampshire concluded that this rule applies only to "ordinary acts of negligence" and explicitly exempted "reckless, wanton, or positive (willful) acts of misconduct from the scope of the rule." *Id.*; *see also Migdal v. Stamp,* 564 A.2d 826, 828 (N.H. 1989). Analyzing wanton conduct, *Akerley* again cited Professors Prosser and Keeton, this time for the proposition that wanton conduct (like reckless conduct) has "generally been treated . . . as an aggravated type of negligence differing in quality from ordinary negligence." *Akerley,* 616 A.2d at 514. *Akerley* concluded the fireman's rule prevented recovery on the negligence count, but not on the wanton and reckless claim. *Id.* Though neither is dispositive, *Akerley*, like *Thompson,* indicates that New Hampshire's general definition of "wanton" falls within the mainstream of other jurisdictions.

### E. Operation of a Motor Vehicle While Under The Influence and Enhanced Compensatory Damages: New Hampshire

Applying the classic definition of wanton, implicitly approved in New Hampshire, it would be difficult not to conclude for Rule 12(c) purposes that the operation of a motor vehicle after ingesting "grossly excessive amounts of alcohol" could constitute wanton conduct. After all, the Special Declaration describes potentially criminal conduct.[7] N.H.

---

[7] The Special Declaration makes no reference to criminal prosecution of Ms. Harris and this Court cannot make any assumptions. (In its Notice of Removal, Defendants allege that Ms. Harris is a citizen of Massachusetts, although currently incarcerated at the Hillsborough County Women's Prison in Goffstown.) (Docket # 1). Its point is rather that for purposes of determining whether operation of a motor vehicle after ingesting "grossly excessive amounts of alcohol," as the Special Declarations allege, could be wanton

REV. STAT. ANN. § 265:82. In fact, based on the allegations in the Special Declaration, it can reasonably be inferred that Ms. Harris engaged in Aggravated Driving While Intoxicated or Negligent Homicide.[8]  N.H. REV. STAT. ANN. §§ 265:82-a, 630:3. If, as alleged here, the operation resulted in serious bodily injury, New Hampshire stipulates that the individual may be guilty of a class B felony, subject to a minimum mandatory fine, jail sentence, and loss of license, N.H. REV. STAT. ANN. § 265:82-b(I)(c), and if, as also alleged, the negligent operation resulted in death, the individual may be guilty of a class A felony. N.H. REV. STAT. ANN. § 630:3(I), (II).

Numerous jurisdictions have had no difficulty concluding that the excessive intake of alcohol followed by the operation of a motor vehicle can constitute wanton conduct:

> When Miller imbibed alcoholic liquor he knew that he was taking into his stomach a substance that would stupefy his senses, retard his muscular and nervous reaction, and impair, if not destroy, the perfect coordination of eye, brain and muscles that is essential to safe driving. After Miller voluntarily rendered himself unfit to operate a car properly he undertook to drive his automobile, a potentially lethal machine, down a well traveled highway. His conduct in doing this was distinctly anti-social, and the jury was amply authorized in saying by their verdict that he was exhibiting a "wanton disregard of the rights and safety of others."

*Miller v. Blanton,* 210 S.W.2d 293, 294-95 (Ark. 1948); *see generally* Danny R. Veilleux, Annotation, *Intoxication of Automobile Driver as Basis for Awarding Punitive Damages,* 33 A.L.R. 5th 303 at II(A)(3) (2005), and cases cited therein.

---

conduct, New Hampshire's criminalizing such conduct reflects the State's recognition of a heightened risk of serious injury under a traditional wantonness analysis.

[8] Aggravated Driving While Intoxicated is separately criminalized under N.H. REV. STAT. ANN. § 265:82-a (2004). The statute provides: "A person shall be guilty of a violation of this section if the person drives or attempts to drive a vehicle upon any way:  I. While under the influence of intoxicating liquor . . . and, at the time alleged . . . (b) [c]auses a motor vehicle collision resulting in serious bodily injury, as defined in RSA 625:11, to the person or another . . . ." § 265:82-a(I)(b). Negligent Homicide is a class A felony, when a person causes the death of another "when in consequence of being under the influence of intoxicating liquor . . . ." N.H. REV. STAT. ANN. § 630:3(I), (II).

In view of New Hampshire's judicial adoption of the wantonness criterion for the allowance of enhanced compensatory damages, its earlier references to the definition of wanton, and the manifestly serious risks inherent in operating a motor vehicle after consumption of excessive amounts of alcohol, risks New Hampshire criminal law recognizes, severely penalizes, and are tragically evident in this case, it would seem the allegations in Mr. McKinnon's Special Declaration would easily survive a Rule 12(c) challenge. The Defendants, however, point to decisions of the Supreme Court of New Hampshire they claim require malice to obtain enhanced compensatory damages arising from operating a motor vehicle while under the influence.

### 1. *Johnsen* and *Gelinas*

The Supreme Court of New Hampshire has taken up the issue twice: *Johnsen v. Fernald* and *Gelinas v. Mackey*.[9] In *Johnsen*, a passenger suffered numerous injuries when the defendant rear-ended her car while it was stopped at a blinking traffic light. 416 A.2d at 1367. Johnsen alleged her injuries resulted from the defendant's "'careless, negligent and unlawful operation' of a motor vehicle, in that 'he failed to maintain a proper look-out, failed to maintain control of his motor vehicle, was operating at a speed greater than was reasonable and prudent, was under the influence of an intoxicating liquor at the time of the collision and was otherwise negligent . . . .'" *Id*. The defendant admitted liability and the case went to a jury for determination of damages. *Id*. Johnsen sought to admit evidence that the defendant was under the influence at the time of the accident and she requested that the jury be instructed it could use that evidence to determine if the defendant's conduct was "wanton." *Id*. If it so found, she argued the jury could reflect the aggravating nature of his conduct in an award of enhanced

---

[9] *Johnsen,* supra; *Gelinas v. Mackey,* 465 A.2d 498 (N.H. 1983).

compensatory damages. *Id.* The trial judge refused to admit the proffered evidence and the plaintiff appealed. *Id.*

In affirming the judgment, the Supreme Court of Hew Hampshire noted that the plaintiff had failed to allege "wanton, malicious or oppressive conduct." *Id.* at 1367-68. Faced with a potentially defective complaint, Ms. Johnsen asserted that "the allegation of driving while under the influence alone amounts to an allegation of wanton or malicious conduct." *Id.* at 1368. The Court in *Johnsen* disagreed:

> The act of operating a motor vehicle while under the influence is indeed deplorable and should the legislature determine, as a matter of public policy, that those who cause injuries while driving under the influence should be liable for enhanced damages, it is free to do so.[10] In the context of measuring damages, however, we do not equate the act of driving while under the influence with the term "malice."

*Id.* (citation omitted). *Johnsen* quoted *Munson v. Raudonis,* supra, for the proposition that if the Court were to "'hold that 'malice' for the purpose of measuring damages is the intentional doing of a wrongful act, then every intentional tort would give rise to the larger amount of damages.'" *Id.* (quoting *Munson,* 387 A.2d at 1177). Just as *Munson* refused to equate an intentional tort with malice, *Johnsen* refused to infuse malice into unintentional torts, such as negligence. *Id.* The majority in *Johnsen* did not discuss whether its logic should extend to wanton conduct and by omission seemed to excise the wanton conduct standard from the *Vratsenes* trilogy, implying only malice would be sufficient to sustain a claim for enhanced compensatory damages in an operating under the influence civil action.

---

[10] In fact, the New Hampshire Legislature did so. In 1981, it enacted a law that authorized the awarding of double damages if the accident resulted in the defendant's conviction for operating under the influence and if the conviction was the second or subsequent conviction in a seven-year period. N.H. REV. STAT. ANN. § 265:82 (1981). But, it repealed the law two years later. *Id.* (repealed 1983). There is no indication it has acted on the issue since the 1983 repeal.

In concurrence, Justice Douglas pointed this out.  He wrote that the majority's reliance on *Munson* was inapposite, because *Munson* had addressed only malice, not "wanton or oppressive conduct," and in the context of an intentional tort – deceit.  *Id.* at 1369 (Douglas, J., concurring).  He argued that "enhanced damages should be allowed in cases like the one at bar, not necessarily because driving while drunk is malicious, but because it is in wanton and deplorable disregard for the rights of others to drive our highways in relative safety."  *Id.* at 1369-70.

Following *Johnsen,* the Supreme Court of New Hampshire was presented with similar facts in *Gelinas.*  Mr. and Ms. Gelinas were injured when a motor vehicle driven by Mr. Mackey, who was in a "highly intoxicated state," struck their car.  *Gelinas,* 465 A.2d at 499.  Mr. Mackey stipulated to liability and, as in *Johnsen*, the only issue was the extent of damages.  *Id.*  Unlike *Johnsen,* however, Mr. and Ms. Gelinas had alleged "wanton" conduct and they were permitted to introduce evidence of Mr. Mackey's intoxication and to request enhanced compensatory damages.  *Id.*  In special findings, the jury concluded Mr. Mackey had not acted "wantonly."  *Id.*  Both the Gelinases and Mr. Mackey appealed.  *Id.*

Mr. Mackey argued that under *Johnsen,* the plaintiffs were not entitled to recover enhanced compensatory damages, since his operation of a motor vehicle under the influence is neither wanton nor malicious conduct.  *Id.*  *Gelinas* gave *Johnsen* an expansive reading, interpreting *Johnsen* as if it had addressed a wantonness claim:

> While we ruled that the plaintiff's failure to allege *wanton* conduct in her writ necessarily precluded her from recovering enhanced damages, we further indicated that no such recovery could have resulted even if *wanton* conduct had been alleged.  We stated that the act of driving while intoxicated did not constitute "*wanton* or malicious" conduct as defined at common law for purposes of enhancing damages.

*Id.* at 499-500 (citation omitted) (emphasis supplied).  Having succeeded on this issue, Mr. Mackey then argued that evidence of his intoxication should not even have been admitted into evidence.  *Gelinas* agreed "the trial court erred in admitting evidence of the defendant's intoxication," but concluded the error was harmless, because the jury found he had not acted wantonly and had awarded no enhanced compensatory damages anyway.[11]  *Id.* at 500.  *Gelinas* unequivocally expressed the law of the state of New Hampshire:  operating a motor vehicle under the influence and causing injury is not wanton conduct supporting a claim for enhanced compensatory damages and it is legal error to admit evidence of intoxication at a trial on damages.

### 2. Superior Court Decisions.

Since *Gelinas*, at least four superior court decisions have cited *Johnsen* and *Gelinas* for the proposition that enhanced compensatory damages are not available in driving while intoxicated cases.  *See Knight v. Gleason*, No. 98-C-293 (Belknap Sup. Ct., Nov. 8, 1999) (motion in limine) ("'Even the deplorable act of operating a motor vehicle under the influence of liquor is not malicious conduct sufficient to invoke the rule of enhanced compensatory damages'" absent a showing of exceptional circumstances, ill-will, hatred, or evil motive on the part of the defendant.) (quoting 8 RICHARD B. MCNAMARA, NEW HAMPSHIRE PRACTICE § 362, at 496 (1996)); *Hanscom v. O'Connell*, No. 03-C-338, 2003 WL 23305265, at *1 (Merrimack Sup. Ct., Nov. 7, 2003) (motion to dismiss) (recognizing the validity of *Gelinas*, but leaving open the issue of enhanced compensatory damages for the jury because New Hampshire was in the minority of

---

[11] Justice Douglas concurred again in the result.  *Gelinas,* 465 A.2d at 501 (Douglas, J., concurring).  But, he reiterated his view that "drunks causing carnage on the highways engage in common-law 'wanton or malicious conduct' . . . ."  *Id.*

jurisdictions and the *Gelinas* decision was "worthy of reconsideration"); *Patterson v. Sanville*, No. 04-C-036 (Grafton Sup. Ct., Apr. 19, 2005) (motion to dismiss) ("It is settled in New Hampshire that driving under the influence of alcohol '[does] not constitute wanton or malicious conduct as defined at common law for purposes of enhancing damages,'" and specifically rejecting the *Hanscom* approach.) (quoting *Gelinas*, 465 A.2d at 500) (internal quotations omitted); *Boutin v. Godding*, No. 04-C-157 (Grafton Sup. Ct., Apr. 19, 2005) (motion to dismiss).

Justice Fitzgerald in *Hanscom,* although recognizing *Johnsen* and *Gelinas* as authoritative, ventured the view that New Hampshire "is out of step with the majority of states" and concluded that "it is appropriate to leave open the issue of enhanced damages at this time." *Hanscom,* 2003 WL 23305265, at *4. Justice Fitzgerald permitted "the issue of possible enhanced damages for reckless or wanton conduct to be determined by the trier of fact" and "allowed . . . evidence of reckless or wanton conduct . . . ." *Id.* By contrast, Justice Houran, after *Hanscom,* in two separate cases, dismissed claims for enhanced damages, commenting: "Until our Supreme Court or legislature decides otherwise, [*Johnsen*] and *Gelinas* remain the controlling law in this jurisdiction." *Patterson,* at 2; *Boutin,* at 3.

### F.  Federal Courts and State Law

As this is a diversity case, New Hampshire law "supplies the substantive rules of decision . . . ." *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1151 (1st Cir. 1996) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)). It is only in "'the absence of a definitive ruling by the highest state court'" that a "'federal court may consider analogous decisions, considered dicta, scholarly works, and . . . other data tending to show how the

highest court in the state would decide the issue at hand, taking into account the broad policies and the trends so evinced.'" *Carreiro v. Rhodes Gill & Co.,* 68 F.3d 1443, 1448 (1st Cir. 1995) (quoting *Gibson v. City of Cranston,* 37 F.3d 731, 736 (1st Cir. 1994)). Alternatively, as Judge McAuliffe noted in *Minion,* when the "course the state court would chart is 'reasonably clear,' a federal court should undertake its own prediction and application of state law." 929 F. Supp. at 525 (quoting *Nieves v. University of Puerto Rico,* 7 F.3d 270, 275 (1st Cir. 1993); *see Cheshire Medical Ctr. v. W.R. Grace & Co.,* 49 F.3d 26, 35 (1st Cir. 1995) (declining to predict an expansion of the doctrine of strict liability under New Hampshire law in light of the state Supreme Court's historically conservative approach to products liability law).  Neither exception obtains here.

*Gelinas* remains the last word from the Supreme Court of New Hampshire on the question of whether the operation of a motor vehicle while under the influence is wanton conduct sufficient in New Hampshire to sustain a claim for enhanced damages.   It is not. What the Supreme Court of New Hampshire would do if it revisited this issue, unlike the issue in *Minion,* is not reasonably clear.  The Supreme Court of New Hampshire issued *Gelinas* after it invited the New Hampshire Legislature to act in *Johnsen*, after the Legislature acted by enacting a double damages statute, and after the Legislature quickly repealed the statute.  The current state of the law in New Hampshire is intertwined with the sensitive question of the state Supreme Court's view of its role and the role of the Legislature in instituting significant changes in public policy.[12]   If state law

---

[12] *Johnsen* stated that "[t]he act of operating a motor vehicle while under the influence is indeed deplorable and should *the legislature* determine, as a matter of public policy, that those who cause injuries while driving under the influence should be liable for enhanced damages, *it* is free to do so." 416 A.2d at 1368 (emphasis supplied).  *Gelinas* made the same point.  465 A.2d at 500.  Justice Douglas in his *Johnsen* concurrence saw "no reason" to "wait for the legislature to act." 416 A.2d at 1368 (Douglas, J., concurring).  After the legislature acted and then repealed the additional civil sanction, Justice Douglas still held with his view that "drunks causing carnage on the highways engage in common-law 'wanton or

unequivocally expressed by the state's highest court is to be changed, it is not this Court's place to change it.   In *Blinzler*, the First Circuit explained that "borrowing state law demands nothing more than interpreting and applying the rules of substantive law enunciated by the state's highest judicial authority," even if a federal court's "independent judgment on the question might differ."   81 F.3d at 1151.

## IV.  CONCLUSION

This Court GRANTS the Defendants' Motion for Judgment on the Pleadings to the extent Count I of the Special Declaration claims enhanced compensatory damages.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of September, 2005

---

malicious conduct' *with or without the presence of R.S.A. 265:89-a." Gelinas,* 465 A.2d at 501 (Douglas, J., concurring) (emphasis supplied).   In this context, the difference between the majority and Justice Douglas in *Johnsen* and *Gelinas* was more about who is to make the law than what the law should be.